Of Counsel:

BAYS LUNG ROSE & HOLMA

BRUCE D. VOSS          6532-0
bvoss@legalhawaii.com
Attorney at Law
A Law Corporation
JAMES G. DIEHL          10637-0
jdiehl@legalhawaii.com
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii  96813
Telephone:  (808) 523-9000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN ROE I; JANE ROE I; and JOHN ROE II, | ) CIVIL NO. _____ ) ) COMPLAINT; DEMAND FOR JURY |
| Plaintiffs, | ) TRIAL; SUMMONS ) |
| vs. | ) ) |
| HAWAII PREPARATORY ACADEMY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) |

465498

<u>COMPLAINT</u>

Plaintiffs John Roe I, Jane Roe I, and John Roe II, by and though their attorneys Bays Lung Rose & Holma, hereby assert the following Complaint against Defendant Hawaii Preparatory Academy, and allege and aver as follows:

<u>JURSIDICTION AND VENUE</u>

1.     This Court has original jurisdiction over this action under 28 U.S.C. § 1331 based on the claims herein arising under the Fair Housing Act, 42 U.S.C. § 3601-3619 ("Fair Housing Act") and 42 U.S.C. §§ 1985, 1986, and 1988.

2.     This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 as all plaintiffs are citizens of the State of Washington, all defendants are citizens of the State of Hawai'i and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

3.     This Court also has supplemental jurisdiction over the state law claims raised in this action pursuant to 28 U.S.C. § 1367(a).

<u>PARTIES</u>

4.     Plaintiff John Roe ("Plaintiff Roe") was at all relevant times herein a male.  Plaintiff Roe was a minor until he turned eighteen (18) in March 2016.

5.     Plaintiff Roe is and was, at all relevant times herein, a resident of Seattle, State of Washington.

6.     Plaintiff Jane Roe I is and was, at all relevant times herein, an individual residing in Seattle, State of Washington.

7.     Plaintiff John Roe II, is and was, at all relevant times herein, an individual residing in Seattle, State of Washington.

8.     Plaintiffs Jane Roe I and John Roe II ("Roe's Parents"), are the biological parents of Plaintiff Roe (collectively "Plaintiffs").

9.     At the time of events complained of herein, Plaintiff Roe was a junior attending school at Defendant Hawaii Preparatory Academy ("Hawaii Preparatory Academy").

10.     Hawaii Preparatory Academy is a private educational institution located in Kamuela, Hawaii County, State of Hawaii.

11.     At all relevant times, "A.C." was an employee of Hawaii Preparatory Academy.

<u>FACTS</u>

<u>HAWAII PREPARATORY ACADEMY</u>

12.     Hawaii Preparatory Academy was founded in 1949 with five boarding students and today hosts nearly six hundred students, approximately two hundred of whom live on campus.

13.     As part of its boarding program, Hawaii Preparatory Academy offers private residence halls for student-residents.

14.     Student-residents at Hawaii Preparatory Academy are expected to follow a rigorous schedule from approximately 8:00 a.m. to 10:30 p.m. each day.

15.     To attract new student-residents, Hawaii Preparatory Academy carefully curates and advertises a public image of a safe and secure institution for students, with an emphasis on its boarding program.

16.     Hawaii Preparatory Academy markets this image through its website using statements such as "[f]or boarding students, Hawaiʻi Preparatory Academy (HPA) is not merely an academic institution – it is a home.  Faculty and staff are not only educators, but parents and mentors, and students are not only friends, but family members."

17.     In exchange for boarding and educating students, Hawaii Preparatory Academy charges premium tuition—the highest tuition for any grades K-12 school in Hawaii.

18.     The boarding facilities at Hawaii Preparatory Academy include three residence halls: Carter Hall, Robertson Hall, and Perry-Fiske Hall.

19.     Student-residents at Hawaii Preparatory Academy live in a variety of housing arrangements from private rooms to shared rooms where two or

more students may sleep.  Student-residents share common facilities for, among other things, recreation and cleaning laundry.

20.     Perry-Fiske Hall is the largest of the three residence halls and houses up to seventy students on two floors.

21.     Located in or near the Perry-Fiske Hall are private apartments where Hawaii Preparatory Academy's employees charged with supervising students live full-time.  Hawaii Preparatory Academy refers to these employees as "Dorm Parents."

22.     Hawaii Preparatory Academy's Student and Parent Handbook 2015-2016 (the "Handbook") states that "[t]he dorm parent on duty (DPoD) in each dorm has primary supervisory responsibilities for that dorm throughout his/her duty shift.  The DPoD provides support and supervision for students in his/her assigned dorm and is the point of contact for routine issues that arise during the shift."  See Handbook at pg. 79.

23.     The Handbook also states that "[DPoD] Weekday Duty Shifts begin and end at 7 a.m."  See id.

24.     Upon information and belief at all relevant times herein, Perry-Fiske Hall was assigned two Dorm Parents.

<u>THE PREDATOR IN PERRY-FISKE HALL</u>

25.     A.C. is a former student of Hawaii Preparatory Academy.

26.     A.C. attended Hawaii Preparatory Academy for four years before graduating in 1996.

27.     In 2010, Hawaii Preparatory Academy hired A.C.

28.     At all relevant times herein, A.C. was a mid to late thirty-year-old female employee of Hawaii Preparatory Academy.

29.     At all relevant times herein, A.C. was employed as a Dorm Parent and lived in or near Perry-Fiske Hall with her two minor children.

<u>ROE GOES TO HAWAII PREPARATORY ACADEMY</u>

30.     In early 2015, Plaintiff Roe applied to and was accepted by Hawaii Preparatory Academy for the Fall 2015.

31.     Plaintiff Roe and Roe's Parents carefully selected Hawaii Preparatory Academy based on, among other things, its reputation and assurances that Plaintiff Roe would be safe.

32.     In August 2015, Plaintiff Roe began attending Hawaii Preparatory Academy and rented a room in Perry-Fiske Hall.

33.     Upon entering Perry-Fiske Hall, Plaintiff Roe was introduced to A.C., who provided her personal cell phone number to Plaintiff Roe.

34.     The Handbook states that each dorm and each Dorm Parent is assigned a cellular phone that is monitored by the dorm parent staff 24 hours per day.  See Handbook at pgs. 80-81.

35.     Upon information and belief, Hawaii Preparatory Academy knew that A.C. provided her cellular phone number to students living in Perry-Fiske Hall, including Plaintiff Roe.

36.     In November 2015, Hawaii Preparatory Academy organized a trip for students to fly to the Island of Kauai, where students would stay for several nights in cabins.  The trip was intended as a Thanksgiving vacation for students that had nowhere else to go and was marketed to students and parents as a safe way to celebrate the holiday.

37.     Three Dorm Parents volunteered to supervise students during the Kauai Trip, including A.C.

38.     Plaintiff Roe did not initially plan to attend the Kauai Trip. A.C., however, urged Plaintiff Roe to attend, and Plaintiff Roe acquiesced.

39.     During the Kauai Trip, A.C. volunteered to sleep in the cabin with the students.

40.     The two other Dorm Parents slept in separate facilities.

41.     When A.C. was alone with the students at night, she became "cuddly" with Plaintiff Roe, resting against him and/or allowing him to sit on her lap.

42.     A.C. used the Kauai Trip to groom Plaintiff Roe, conveying an image that she was a peer and a friend by, among other things, inviting Plaintiff Roe to ride in her vehicle, allowing Plaintiff Roe to select the music in her car, and having prolonged one-on-one conversations.

43.     It was foreseeable that by permitting a Dorm Parent who openly favored students, gave special privileges to individual students, and engaged students as a peer, to have unsupervised access to students in an isolated cabin, that the Dorm Parent would sexually abuse students, including Plaintiff Roe.

44.     Despite this information, Hawaii Preparatory Academy negligently permitted A.C. to stay in the cabin with students and without any additional supervision, for multiple nights.

### A.C.'S APARTMENT AT HAWAII PREPARATORY ACADEMY

45.     When Plaintiff Roe returned to Hawaii Preparatory Academy, A.C.'s grooming intensified.

46.     Through other students, Plaintiff Roe was made aware that A.C. maintained an open door policy, whereby whenever the door to her apartment was open, students were permitted to come and go as they pleased.

47.    A.C. encouraged students to use her apartment for studying and "hanging out."

48.    A.C. would "hang out" with students in her apartment.

49.    Upon information and belief, Hawaii Preparatory Academy was aware that A.C. entertained students in her apartment.

50.    Upon information and belief, no other Dorm Parents permitted students to use their private apartments for studying and "hanging out."

51.    With the encouragement of A.C., Plaintiff Roe began spending time in A.C.'s apartment.

52.    A.C. used the apartment provided by Hawaii Preparatory Academy to further groom Plaintiff Roe, imprinting on Plaintiff Roe the idea that A.C. was a peer—like any other student.

53.    In December 2015, Plaintiff Roe left Hawaii Preparatory Academy to spend the holidays with his family.

54.    During this time, A.C. began calling and texting Plaintiff Roe. The volume of texts and length of the phone calls continued to increase over the next several months.

55.    In January 2016, A.C. invited Plaintiff Roe to join her "inner circle" of approximately ten students, who were allowed to enter A.C.'s apartment

without first asking A.C.'s permission, to use A.C.'s refrigerator, and to use A.C.'s stove to cook food.

56.     A.C. also allowed this select group of students, which now included Plaintiff Roe, to sleep overnight in her apartment with her and her two minor children.

57.     A.C. kept four beds in her apartment which students were allowed to sleep in: a larger bed in a bedroom, a two-mattress bunk bed in a second bedroom, and a small mattress in the living room, which was converted into a makeshift couch, using pillows for back and arm rests.

58.     Upon information and belief, all of the furniture in the apartment was provided to A.C. by Hawaii Preparatory Academy.

59.     A.C. permitted male and female students who slept in her apartment overnight to share beds.

60.     On several occasions, A.C. slept in the same bed as students, including Plaintiff Roe.

61.     A.C. created a "Neverland Ranch" within the apartment provided by Hawaii Preparatory Academy, where she could entertain students, relive her earlier years at Hawaii Preparatory Academy, and build a fantasy world where students would be led to believe that sex with an adult was acceptable.

62.     On at least one occasion, A.C. "cuddled" with Plaintiff Roe in bed alone, while other students were present in the apartment.

63.     Upon information and belief, A.C. permitted students to sleep in her apartment overnight and shared beds with students for an indefinite time prior to 2016.

64.     Upon information and belief, Hawaii Preparatory Academy was aware that students were sleeping overnight in A.C.'s apartment, that male and female students were sleeping together, that male and female students were sleeping together in A.C.'s bed, and that A.C. slept in her bed with students.

65.     Despite this information, Hawaii Preparatory Academy negligently allowed A.C. to serve as a Dorm Parent and to have unsupervised access to minor students overnight in the private apartment provided by Hawaii Preparatory Academy.

66.     In February 2016, A.C. invited Plaintiff Roe to her apartment alone at night.  A.C. sexually abused Plaintiff Roe on the makeshift couch in the front room of her apartment.  Following months of grooming Plaintiff Roe by A.C. at Hawaii Preparatory Academy, on trips organized by Hawaii Preparatory Academy, using facilities provided by Hawaii Preparatory Academy, all in full view of school officials, A.C. exploited the opportunity to satisfy her sexual desires at the expense of Plaintiff Roe.

67.     Between February 2016 and March 2016, A.C. sexually abused Plaintiff Roe approximately sixteen (16) to twenty-four (24) times in A.C.'s apartment at Hawaii Preparatory Academy.

68.     On multiple occasions, A.C. texted Plaintiff Roe after 10:30 p.m. to meet in A.C.'s apartment to have sex.  Plaintiff Roe would then walk from his dorm room to A.C.'s apartment.

69.     Plaintiff Roe's room is located on the second floor of Perry-Fiske Hall in Hawaii Preparatory Academy.

70.     A.C.'s apartment is located on or near the first floor of Perry-Fiske Hall in Hawaii Preparatory Academy.

71.     Per the Handbook, Hawaii Preparatory Academy has 24-hour-per-day security patrols.  See Handbook at pg. 102.

72.     Upon information and belief Hawaii Preparatory Academy monitors the second floor hallway connected to Plaintiff Roe's dorm room using security cameras.

73.     Upon information and belief at all relevant times herein, the cameras in the second floor hallway of Perry-Fiske Hall were operational.

74.     Upon information and belief, the security cameras in the second floor hallway of Perry-Fiske Hall observed Plaintiff Roe exiting his dorm room

alone after 10:30 p.m., and returning at approximately 7:15 a.m. the next morning, sixteen (16) to twenty-four (24) times between February 2016 and March 2016.

75.     Hawaii Preparatory Academy monitors the first floor hallway connected to A.C.'s apartment using security cameras.

76.     Upon information and belief at all relevant times herein, the cameras in the first floor hallway of Perry-Fiske Hall were operational.

77.     Upon information and belief, the security cameras in the second floor hallway of Perry-Fiske Hall observed Plaintiff Roe descending from the second floor to the first floor and then entering A.C.'s apartment alone after 10:30 p.m., and exiting alone or with A.C. at approximately 7:15 a.m. the next morning, sixteen (16) to twenty-four (24) times between February 2016 and March 2016.

78.     Upon information and belief, A.C. has had prior inappropriate relationships with students and/or former students of Hawaii Preparatory Academy.

79.     Upon information and belief, Hawaii Preparatory Academy knew or should have known that A.C. was sexually abusing Plaintiff Roe in her apartment several times per week.

80.     Despite this information, Hawaii Preparatory Academy knowingly and/or negligently failed to prevent, report, or investigate the repeated sexual abuse of Plaintiff Roe.

81. Upon information and belief, Hawaii Preparatory Academy and its employees, agents, officers, and/or directors conspired to deprive Plaintiff Roe of protection of the laws, or equal privileges and immunities provided to female students at Hawaii Preparatory Academy.

82. The concerted actions of Hawaii Preparatory Academy and its employees, agents, officers, and/or directors, created a hostile housing environment.

83. The concerted actions of Hawaii Preparatory Academy and its employees, agents, officers, and/or directors, directly affected the terms, conditions, or privileges of Plaintiff Roe's housing at Perry-Fiske Hall.

<u>HAWAII PREPARATORY ACADEMY COVERS UP THE SEXUAL ABUSE</u>

84. Between February 2016 and March 2016, on multiple occasions A.C. invited Plaintiff Roe to ride in her personal vehicle to go surfing.

85. Per the Handbook, Hawaii Preparatory Academy requires that students sign in and out on the communication board in the lower commons before leaving campus and that students notify their Dorm Parent.  <u>See</u> Handbook at 94.

86. Upon information and belief, Hawaii Preparatory Academy knew that on multiple occasions A.C. picked up Plaintiff Roe in her personal vehicle from Hawaii Preparatory Academy and drove him off campus.

87.     On one occasion, upon returning to campus, and while parked in the parking lot in front of Perry-Fiske Hall, A.C. began kissing Plaintiff Roe.

88.     On this occasion, Plaintiff Roe observed an individual who he recognized as "Ms. T," another Dorm Parent employed by Hawaii Preparatory Academy, in the adjacent vehicle.

89.     Upon information and belief, Ms. T observed A.C. kissing Plaintiff Roe.

90.     Upon information and belief, Ms. T reported seeing A.C. and Plaintiff Roe kissing in the parking lot in front of Perry-Fiske Hall.

91.     Upon information and belief, Ms. T was terminated by Hawaii Preparatory Academy.

92.     Upon information and belief, Hawaii Preparatory Academy knew or should have known that A.C. was sexually abusing Plaintiff Roe.

93.     Further, it was foreseeable that a Dorm Parent who sexually abused a minor student in an open parking lot at Hawaii Preparatory Academy, in front of another Dorm Parent, would continue to sexually abuse minor students.

94.     Despite this information, Hawaii Preparatory Academy failed to terminate A.C., failed to relieve A.C. from her duties as a Dorm Parent, and continued to provide a private apartment in which A.C. could sexually abuse minor students in seclusion.  Further, upon information and belief, when confronted with

evidence of Plaintiff Roe's sexual abuse, Hawaii Preparatory Academy chose to conceal the evidence by terminating Ms. T.

95.    Upon information and belief, Hawaii Preparatory Academy and its employees, agents, officers, and/or directors conspired to conceal evidence and/or deprive Plaintiff Roe of protection of the laws, or equal privileges and immunities under the United States Constitution and the Fair Housing Act.

96.    Upon information and belief, Hawaii Preparatory Academy and its employees, agents, officers, and/or directors engaged in concerted actions to withhold, conceal, or destroy evidence and to harm Plaintiff Roe, including but not limited to, conducting a sham investigation of the hostile housing environment created by Hawaii Preparatory Academy and the extensive sexual harassment committed against Plaintiff Roe.

97.    Upon information and belief, the concerted actions of Hawaii Preparatory Academy and its employees, agents, officers, and/or directors, were motivated by invidious animus based on Plaintiff Roe's male gender.

98.    Upon information and belief, employees, agents, officers, and/or directors of Hawaii Preparatory Academy had knowledge of the wrongs conspired to be done and power to prevent or aid in preventing the commission of the same, but neglected and/or refused to prevent or aid in preventing the commission of the wrongs against Plaintiff Roe.

99.     As a direct result of the Hawaii Preparatory Academy's conduct described herein, Plaintiff Roe has now realized that he has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, and psychological injuries.  Plaintiff Roe was prevented and will continue to be prevented from performing his normal daily activities and obtaining full enjoyment of life; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling; and, on information and belief, has incurred and will continue to incur loss of income and/or loss of earning capacity.

### ROE'S PARENTS DISCOVER THE ONGOING SEXUAL ABUSE AT HAWAII PREPARATORY ACADEMY

100.    In March 2016, Roe's Parents discovered numerous disturbing text messages on Plaintiff Roe's cell phone from A.C., such as "Ummm... [Plaintiff Roe]? All I WANT to do is spend all day all night every day having sex with you."

101.    Over the next several weeks, Roe's Parents learned the full extent of the sexual abuse against Plaintiff Roe and about Hawaii Preparatory Academy's negligence.

102.    Roe's Parents were shocked and disgusted to learn that their minor son was repeatedly sexually abused due to Hawaii Preparatory Academy's negligence.

103.   As a direct result of the Hawaii Preparatory Academy's conduct described herein, Roe's Parents have suffered and will continue to suffer severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, and psychological injuries.

### COUNT I – VIOLATIONS OF FAIR HOUSING ACT, 42 U.S.C. § 3604

104.   Plaintiffs repeat, reallege, and incorporate herein the allegations contained in paragraphs 1 though 103 of this Complaint.

105.   In exchange for tuition payments Plaintiff Roe received, among other things, rental use of an on-campus dwelling located in Perry-Fiske Hall and provision of services and facilities in connection therewith.

106.   Plaintiff Roe, as a male, belongs to a protected group under the Fair Housing Act based on gender discrimination.

107.   Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, subjected Plaintiff Roe to extensive unwelcome, undesired, and/or offensive sexual harassment, in the form of sexual advances and other verbal and physical conduct of a sexual nature, including but not limited to sexual intercourse.

108.   Upon information and belief, Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, knowingly and/or

recklessly failed to protect against or deliberately subjected Plaintiff Roe to sexual harassment based on his gender.

109.    Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, knew or should have known that the conditions in its on-campus dwellings created a hostile housing environment, that sexual harassment was likely to occur, and that sexual harassment did occur.

110.    The sexual harassment by Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, affected the terms, conditions, or privileges of housing.

111.    As a direct and foreseeable result of Hawaii Preparatory Academy's conduct, Plaintiff Roe has been damaged in an amount to be proven at trial.

## COUNT II – CIVIL CONSPIRACY, 42 U.S.C. §§ 1985(3), 1986, & 1988

112.    Plaintiffs repeat, reallege, and incorporate herein the allegations contained in paragraphs 1 though 111 of this Complaint.

113.    Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, knowingly agreed and conspired to deprive Plaintiff Roe of protection of the laws, or equal privileges and immunities under the United States Constitution and the Fair Housing Act, by subjecting Plaintiff Roe to sexual harassment.

114.   Upon information and belief, in furtherance of the conspiracy by and among Hawaii Preparatory Academy and its employees, agents, officers, and/or directors, Hawaii Preparatory Academy conducted a sham investigation of the hostile housing environment created by Hawaii Preparatory Academy and the extensive sexual harassment committed against Plaintiff Roe.

115.   Upon information and belief, based on the sham investigation of the hostile housing environment created by Hawaii Preparatory Academy and the extensive sexual harassment committed against Plaintiff Roe, Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, agreed and conspired to withhold, conceal, and/or destroy evidence of the hostile housing environment and sexual abuse committed against Plaintiff Roe in order to deprive Plaintiff Roe of protection of the laws, or equal privileges and immunities under the United States Constitution and the Fair Housing Act.

116.   Upon information and belief, the actions of Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, were motivated by invidious animus based on Plaintiff Roe's male gender.

117.   Further, upon information and belief, employees, agents, officers, and/or directors of Hawaii Preparatory Academy had knowledge of the wrongs conspired to be done and power to prevent or aid in preventing the

commission of the same, but neglected and/or refused to prevent or aid in preventing the commission of the wrongs against Plaintiff Roe.

118.   As a direct and foreseeable result of the conspiracy by and amongst Hawaii Preparatory Academy and its employees, agents, officers, and/or directors, and the conduct of the same in furtherance of such conspiracy, Plaintiff Roe has been damaged in an amount to be proven at trial.

COUNT III - NEGLIGENT SUPERVISION, TRAINING, OR RETENTION

119.   Plaintiffs repeat, reallege, and incorporate herein the allegations contained in paragraphs 1 though 118 of this Complaint.

120.   At all times, A.C. was under the direction, supervision, and control of Hawaii Preparatory Academy and was otherwise its agent.

121.   By establishing, staffing, and/or operating Hawaii Preparatory Academy, encouraging the tutelage and instruction of Plaintiff Roe at the Hawaii Preparatory Academy and in its Residence Hall, accepting Plaintiff Roe as a student at Hawaii Preparatory Academy, and holding Hawaii Preparatory Academy out to be a safe environment for learning and living, Hawaii Preparatory Academy entered into an express and/or implied duty to provide a reasonably safe environment for students, including Plaintiff Roe.

122.   Hawaii Preparatory Academy further assumed this duty by holding A.C. out to the public, including Plaintiff Roe, as a competent and trustworthy supervisor, Dorm Parent, employee, teacher, and counselor.

123.   Hawaii Preparatory Academy negligently retained and supervised A.C. when Hawaii Preparatory Academy knew or should have known that A.C. posed a threat to students.

124.   Upon information and belief, while A.C. was an employee and/or agent acting as a Dorm Parent, Hawaii Preparatory Academy became aware that A.C. was unfit to serve as a Dorm Parent.  Despite this information, Hawaii Preparatory Academy negligently retained A.C. where she was able to sexually abuse the minor Plaintiff Roe.

125.   Further, upon information and belief, Hawaii Preparatory Academy was aware that A.C. had engaged in an inappropriate relationship with a former student, and failed to investigate whether A.C. had sexually abused the former student prior to graduating from Hawaii Preparatory Academy.  Without further investigation, Hawaii Preparatory Academy negligently retained A.C. where she was able to sexually abuse the minor Plaintiff Roe.

126.   It was foreseeable to Hawaii Preparatory Academy that a Dorm Parent who gave special privileges to select students, allowed students to sleep in

her room, allowed students to sleep in her bed, and slept in bed with students, would sexually abuse students, including Plaintiff Roe.

127. Despite this knowledge, Hawaii Preparatory Academy failed to exercise reasonable care to supervise A.C.

128. As a direct result of Hawaii Preparatory Academy's negligence, Plaintiff Roe has suffered the injuries alleged herein.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

129. Plaintiffs repeat, reallege, and incorporate herein the allegations in paragraphs 1 through 128 of this Complaint.

130. Hawaii Preparatory Academy's conduct toward Plaintiff Roe, as described herein, to create an environment where A.C. was free to choose her sexual conquests among students in her apartment and to repeatedly engage in sexual intercourse with Plaintiff Roe has been outrageous, with the intent to cause, or in reckless disregard of the probability of causing Plaintiffs to suffer emotional distress.

131. Plaintiffs have suffered severe emotional distress as the result of Hawaii Preparatory Academy's and its employee's conduct.

132. As a direct and foreseeable result of Hawaii Preparatory Academy's outrageous conduct, which caused Plaintiffs severe emotional distress, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

133.   Plaintiffs hereby repeat, reallege, and incorporate herein the allegations in paragraphs 1 through 132 of this Complaint.

134.   Hawaii Preparatory Academy's actions amount to negligence.

135.   Plaintiff Roe and Roe's Parents have suffered severe emotional distress as the result of Hawaii Preparatory Academy's negligence.

136.   As a direct and foreseeable result of the Hawaii Preparatory Academy's negligent infliction of severe emotional distress, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT VI - INVASION OF PRIVACY

137.   Plaintiffs hereby repeat, reallege, and incorporate the allegations in paragraphs 1 through 136 of this Complaint.

138.   Hawaii Preparatory Academy, including its employees, agents, officers, and/or directors, unlawfully intruded into Plaintiff Roe's privacy.

139.   Plaintiff Roe was entitled to keep private, among other things, the intimate details of his person.

140.   Reasonable persons would object to Hawaii Preparatory Academy's, and/or its employees', agents', officers', and/or directors' use of manipulation, isolation, and abuse of authority as an adult and/or school employee to intrude upon Plaintiff Roe's privacy.

141.   As a direct and foreseeable result of the Hawaii Preparatory Academy's unlawful instruction into matters which Plaintiff Roe is entitled to keep private, Plaintiff Roe has suffered damages in an amount to be proven at trial.

<u>COUNT VII - NEGLIGENCE & GROSS NEGLIGENCE</u>

142.   Plaintiffs repeat, reallege, and incorporate herein the allegations contained in paragraphs 1 through 141 of this Complaint.

143.   Hawaii Preparatory Academy owed a duty to Plaintiff Roe to, among other things, monitor, supervise, or provide security from sexual abuse while Plaintiff Roe attended Hawaii Preparatory Academy and resided in Hawaii Preparatory Academy's Residence Hall.

144.   Furthermore, Hawaii Preparatory Academy was duty-bound to investigate, document, assess, and/or report suspicious activity affecting the health, safety, and well-being of students, including Plaintiff Roe.

145.   Moreover, Hawaii Preparatory Academy had a duty to properly train and/or educate its employees, and/or establish, maintain, and enforce adequate policies to prevent sexual abuse of Plaintiff Roe and other students.

146.   Finally, Hawaii Preparatory Academy had a duty to, among other things, monitor, supervise, or secure its residence halls, and/or establish, maintain, and enforce policies for use of residence halls to prevent the sexual abuse of students.

147.   Hawaii Preparatory Academy was and is responsible for the negligent acts and/or omissions attributable to its employees, agents, officers, directors, supervisors and representatives under the theory of *respondent superior* or vicarious liability because the acts and/or omissions occurred in the course and scope of their employment at Hawaii Preparatory Academy.  Such employees, agents, officers, directors, supervisors, and representatives, including but not necessarily limited to A.C. are responsible for their own negligent acts or omissions.

148.   Hawaii Preparatory Academy committed one or more acts or omissions, either directly or through their employees, agents, officers, supervisors and representatives each of which amounted to an act and/or omission which a reasonably prudent school, student housing provider, and/or staff similarly situated would not have done in the same or similar circumstances, proximately causing the occurrences, injuries and damages complained of herein.

149.   The aforesaid negligent acts and omissions constitute a breach or breaches or deviations from the applicable standard of care which proximately caused or contributed to, and/or were substantial factors in causing injury and damage to Plaintiff Roe.  When viewed objectively, the aforementioned acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiff Roe and, though Hawaii Preparatory

Academy was subjectively aware of such risk, it proceeded with conscious disregard for the rights, safety and/or welfare of Plaintiff Roe.  For these reasons, Hawaii Preparatory Academy's alleged acts of negligence rise to the level of gross negligence.

150.   Hawaii Preparatory Academy is also liable for punitive or exemplary damages resulting from the grossly negligent conduct of their employees, agents, representatives, officers and supervisors since Hawaii Preparatory Academy either:

A.   authorized the doing and the manner of the acts and omissions in question;

B.   recklessly employed personnel who were unfit, incompetent, and/or unqualified to perform the duties and tasks assigned to them;

C.   employed personnel who were acting within the course and scope of their employment at the time the negligent acts and/or omissions occurred and failed to stop or prevent such acts and/or omissions; and/or,

D.   through its officers, managers, supervisors, directors, and/or head dorm parent ratified or approved the negligent acts and/or omissions in question.

151.   Plaintiff Roe is entitled to recover from Hawaii Preparatory Academy all actual damages occasioned by their negligence and further, to recover an award of punitive or exemplary damages occasioned by the grossly negligent conduct of Hawaii Preparatory Academy.

465498

## COUNT VIII - PUNITIVE DAMAGES

152.   Plaintiffs hereby repeat, reallege, and incorporate herein the allegations contained in paragraphs 1 through 151 of this Complaint.

153.   Hawaii Preparatory Academy's conduct toward Plaintiffs, as described herein, constitutes willful, wanton, and/or malicious conduct, and/or reckless disregard for the rights of Plaintiffs under the law.

154.   Plaintiffs suffered damages as a direct and foreseeable result of Hawaii Preparatory Academy's conduct.

155.   Plaintiffs are entitled to recover punitive damages against Hawaii Preparatory Academy.

WHEREFORE, Plaintiffs pray that judgment be entered in his favor and against Hawaii Preparatory Academy as follows:

A.   For special damages in an amount to be proven at trial;

B.   For general damages in an amount to be proven at trial;

C.   For punitive damages in an amount to be proven at trial;

D.   For reasonable attorneys' fees, together with costs of suit incurred pursuant to 42 U.S.C .§ 1988;

E.   For interest on the foregoing at the maximum rate permitted by law; and

465498

F.   For all such other and further relief as this Court may deem just and proper.

DATED:    Honolulu, Hawaii, May 31, 2017.

/s/ James G. Diehl
BRUCE D. VOSS
JAMES G. DIEHL

Attorneys for Plaintiffs